**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **MELVIN REED,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No. 08 CV 5604** |
| **v.** | ) | **Magistrate Judge Susan E. Cox** |
| | ) | |
| **MICHAEL J. ASTRUE, Commissioner of** | ) | |
| **Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

<u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Melvin Reed seeks judicial review of a final decision denying his application for

Disability Insurance Benefit ("DIB") under Title II of the Social Security Act.[1] Plaintiff has filed

a Motion for Summary Judgment and seeks a judgment reversing or remanding the

Commissioner's final decision. For the reasons set forth below, plaintiff's motion is granted [dkt

15] .

PROCEDURAL HISTORY

On December 21, 2005, plaintiff applied for DIB with a period of disability beginning on

December 8, 2004.[2] He alleged that pain in his lower back and legs, caused by a back injury, had

rendered him unable to perform his job as a semi-truck driver.[3] The Social Security

Administration denied both his initial application for DIB and his subsequent request for

reconsideration.[4] On September 27, 2006, plaintiff requested a hearing before an Administrative

---

1 42 U.S.C. § 405(g).
2 R. at 111.
3 R. at 115.
4 R. at 60, 72.

Law Judge ("ALJ").[5] On January 22, 2008, that request was granted, and a hearing took place before ALJ Joel G. Fina.[6] On March 27, 2008, the ALJ issued a decision finding plaintiff not disabled from December 8, 2004 through the date of the decision.[7] On May 6, 2008, plaintiff filed a request for review of the ALJ's decision with the Social Security Administration Appeals Council ("Appeals Council").[8] On September 11, 2008, the Appeals Council denied that request, leaving the ALJ's ruling as the final decision of the Commissioner.[9] On October 7, 2008, plaintiff filed this action.

STATEMENT OF FACTS

**A. Introduction and Medical Evidence**

The facts set forth below provide a brief review of plaintiff's background and the events that led to his application for DIB. They derive from the medical record, which the ALJ reviewed at plaintiff's hearing and considered when issuing his decision.

Plaintiff was born on January 6, 1948, making him sixty years old on the date the ALJ issued his decision.[10] He graduated from high school and served in the army for two years.[11] He worked as a semi-truck driver for 32 years.[12] His last day of work occurred on December 8, 2004.[13] His Disability Report, dated December 21, 2005, indicates that pain in his lower back and legs stemming from a back injury caused him to stop work.[14]

---

5 R. at 78.
6 R. at 52.
7 R. at 59.
8 R. at 41.
9 R. at 36-38.
10 R. at 6.
11 R. at 7.
12  R. at 115.
13 *Id.*
14 *Id.*

On December 22, 2004, plaintiff visited Samuel Mathew, M.D., for lower back pain and soreness and numbness in his lower extremities.[15] Dr. Mathew noted pain, decreased sensation in plaintiff's lower extremities, slightly decreased peripheral pulses, and slightly decreased ambulation.[16] He, thus, advised plaintiff to avoid excessive movement of his lower back and prescribed Skelaxin, a muscle relaxant often used to treat lower back pain,[17] Arthotec, an arthritis medication,[18] and Tylenol No. 3 (Tylenol With Codeine), a pain killer used to treat mild-to-moderately severe pain.[19] He also ordered a lumbar spine MRI.[20]

On January 20, 2005, the MRI revealed small-to-moderate-sized right foraminal disc herniation at L3-L4 and mild bulging of the L4-L5 discs.[21] Based on this, Dr. Mathew advised plaintiff to wear a back brace, undergo physical therapy, continue to take pain medication, limit his movements, and consult a neurosurgeon.[22]

On February 2, 2005, plaintiff underwent a neurosurgical evaluation by Augusto Chavez, M.D.[23] Dr. Chavez noted that plaintiff had normal sensation and standing position and that there was no evidence of a limp.[24] In addition, he recorded that plaintiff exhibited: (1)"severe low back pain radiating to his right lower extremity secondary to a large lateral herniated disc at L3-4 on the right;" (2) "lumbar (lower back[25]) radiculopathy (nerve disease[26]) secondary to severe low

---

15 R. at 194.
16 *Id.*
17 *Id.*; PHYSICIANS' DESK REFERENCE 1784 (63rd ed., Thomson Reuters 2009).
18 R. at 194; PDR Health Physicians' Desktop Reference: Arthotec,
http://www.pdrhealth.com/drugs/rx/rx-mono.aspx?contentFileName=Art1031.html&contentName=Arthrotec&contentId=55 (last visited July 23, 2009).
19 R. at 194; PHYSICIANS' DESK REFERENCE 2427.
20 R. at 194.
21 R. at 160.
22 R. at 194.
23 R. at 157.
24 *Id.*
25 DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1029 (29th ed., W.B. Saunders Company 2000).
26 *Id.* at 1511.

back pain radiating to his right lower extremity secondary to large lateral herniated disc at L3-4 on the right," (3) "lumbar spondylosis at L3-4 and L4-5," a condition also known as degenerative disc disease;[27] and (4) "no evidence of spinal canal stenosis,"[28] where the spinal canal narrows.[29] Dr. Chavez opined that plaintiff "definitely" needed surgery.[30] Although noting that there was no guarantee surgery would be effective, he stated that plaintiff's condition would most likely worsen without surgery.[31] In two subsequent examinations, Dr. Mathew noted no significant improvements in plaintiff's condition.[32]

On May 26, 2005, plaintiff failed to show up to an appointment with Dr. Chavez.[33] That appointment was rescheduled for June 9, 2005, at which time Dr. Chavez observed that plaintiff preferred to try physical therapy before surgery and suggested that plaintiff try Celebrex,[34] which is an arthritis pain treatment.[35] On June 23, 2005, Dr. Chavez noted that plaintiff was feeling a little better and walking more.[36] On July 21, 2005, Dr. Chavez recorded that plaintiff's great toe was numb and very sensitive on the bottom, that Celebrex offered relief for short periods of time, and that plaintiff's strength and pain level was improving.[37] Plaintiff missed his next appointment with Dr. Chavez, which had been scheduled for August 18, 2005.[38]

27 *Id.* at 168.

28 R. at 158.

29 THE MERCK MANUAL OF DIAGNOSIS AND THERAPY 476 (17th ed., John Wiley & Sons 1999).

30 R. at 158.

31 *Id.*

32 R. at 194. The dates of these examinations are unclear from the record, but these appointments appear to have taken place before June 1, 2005. *See* R. at 193-94.

33 R. at 155.

34 R. at 184.

35 PDR Health Physician's Desktop Reference: Celebrex, http://www.pdrhealth.com/drugs/rx/rx-mono.aspx?contentFileName=Cell078.html&contentName=Celebrex&contentId=115 (last visited Sept. 30, 2009).

36 R. at 182.

37 *Id.*

38 R. at 152.

On October 15, 2005, Dr. Mathew noted no change in plaintiff's condition and wrote that plaintiff continued to exhibit limited range of motion, pain, and discomfort in his lower back.[39] On January 18, 2006, Dr. Mathew prescribed plaintiff Norflex, Celebrex, and Tylenol No. 3, and recommended that plaintiff wear a back brace, avoid lower back movement as much as possible, and get adequate amounts of rest.[40]

On March 1, 2006, Stanley Rabinowitz, M.D., examined plaintiff at the request of the state disability examiner.[41] Dr. Rabinowitz was not provided with plaintiff's medical history.[42] Plaintiff was not taking any pain medication at the time of the exam.[43] Plaintiff stated that he could lift less than 30 pounds, stand for 15 to 20 minutes, and sit for one hour.[44] Dr. Rabinowitz observed that plaintiff's gait, reflexes, and station were normal, that plaintiff had no difficulty in getting on and off the examining table or with squatting, and that plaintiff walked normally without the help of any device.[45] The examination revealed that plaintiff suffered from probable degenerative joint disease and chronic LS and CS pain syndromes (which appears to stand for chronic lumbar spine and cervical spine pain syndromes, without evident radiculopathy).[46]

On March 14, 2006, Virgilio Pilapil, M.D., a state agency reviewing physician, assessed plaintiff's residual functional capacity ("RFC").[47] He concluded that plaintiff could occasionally lift or carry fifty pounds, frequently lift or carry 25 pounds, stand or walk for a total of six hours, with normal breaks, sit for a total of six hours, with normal breaks, and push or pull on an

---

39 R. at 193.
40 *Id.*
41 R. at 166.
42 *Id.*
43 R. at 167.
44 R. at 166.
45 R. at 167.
46 R. at 169; *see also Pl. Brief in Support of Summary Judgment* at 4.
47 R. at 170-77.

unlimited basis.[48] Four months later, on July 27, 2006, a second state agency reviewing physician, Robert Patey, M.D., reviewed plaintiff's medical record.[49] He concurred with Dr. Pilapil's RFC findings.[50]

Thereafter, between May 13, 2006 and January 5, 2008, Dr. Mathew examined plaintiff an additional eight times, recording no change in condition after each examination.[51] Then, on January 5, 2008, Dr. Mathew examined plaintiff for the last time before plaintiff's January 22, 2008 disability hearing.[52] Again, Dr. Mathew noted that plaintiff demonstrated no appreciable improvement, continued to exhibit lumbar pain and restricted range of mobility, and had been advised to see a neurosurgeon and undergo physical therapy.[53]

## B. The January 22, 2008 Hearing

Plaintiff's hearing before the Social Security Administration took place on January 22, 2008.[54] Plaintiff appeared in person and was represented by attorney Jonathan Pearson.[55] A vocational expert ("VE"), Cheryl Hoiseth, also testified.[56]

At the hearing, plaintiff testified that he had worked as a semi-truck driver for 32 years.[57] He lived in Country Club Hills, Illinois, with his wife and nineteen-year-old son.[58] He had been three years away from retirement when he terminated his employment with United Parcel Service

---

48 R. at 171.
49 R. at 179.
50 *Id.*
51 R. at 193.
52 R. at 192.
53 *Id.*
54 R. at 1.
55 R. at 3.
56 R. at 26.
57 R. at 23-24.
58 R. at 8.

("UPS").[59] His last day of work had been on December 8, 2004, and he had officially retired in 2005.[60] Plaintiff stated that he was not currently working, had not filed for workers' compensation, and that he was receiving a monthly pension of $2,900.[61]

When asked by the ALJ why he had been unable to work since December 8, 2004, plaintiff responded that he was in pain and could not stand or sit for long periods of time.[62] Plaintiff said that he experienced sharp pain in his right hip two or three times per week.[63] He rated this pain a six on a scale of ten.[64] In addition, plaintiff stated that he suffered from numbness and sharp pain in both legs, and sharp pain in his big toes.[65] He rated this pain as an eight out of ten.[66] Plaintiff also stated that he experienced pain running from shoulder to shoulder.[67]

Plaintiff testified that he had originally injured his back while lifting a dolly in 1998.[68] After that injury, he had been unable to return to work for eleven months, and his doctors had restricted him from lifting more than 20 pounds at a time.[69] In 2000 and 2001, he had taken additional time off work when his injury flared up.[70] He had returned to UPS in 2002, but re-injured his back while hooking up a trailer in November 2004.[71] Plaintiff testified that he had decided not to return to work after his second injury because working as a truck driver did not benefit his back, and because he was approaching retirement.[72]

59 R. at 23.
60 R. at 8.
61 R. at 7-10.
62 R. at 9.
63 R. at 15.
64 *Id.*
65 R. at 16.
66 R. at 17.
67 *Id.*
68 R. at 21.
69 *Id.*
70 R. at 21, 103.
71 R. at 8.
72 R. at 8, 23.

In response to questions about his daily activities, plaintiff said that he was able to care for his own personal needs, such as shaving and showering.[73] He possessed a valid driver's license, and had driven himself to the hearing.[74] He drove his grandson to school on a daily basis.[75] Once per year, he drove to and from Detroit.[76] He stated that he was also able to wash dishes, cook, vacuum a little, shop a little, take out light trash, and mow his 3/4-acre lawn with a self-propelled lawnmower, which took an hour and a half over the course of two days.[77] He shoveled his 25-foot driveway when it snowed.[78]

Plaintiff testified that he could sit 25 or 30 minutes and stand 15 or 20 minutes before becoming uncomfortable.[79] He had trouble with his balance and climbing stairs.[80] He performed home stretching exercises to help relieve his pain, and he had recently joined a gym.[81] He also took prescribed pain medication on an as-needed basis.[82]

The VE, Cheryl Hoiseth, then testified.[83] She stated that plaintiff's past relevant work as a semi-truck driver was medium, semi-skilled work that did not provide transferrable skills but that plaintiff's job, as plaintiff described it, met the regulatory definition of light work.[84] The ALJ asked the VE whether a person with plaintiff's age, education, work experience, and skill set, with the ability to occasionally lift up to 20 pounds, frequently lift or carry up to ten pounds,

---

73 R. at 10.
74 *Id.*
75 R. at 19.
76 R. at 12.
77 *Id.*
78 R. at 20.
79 R. at 13.
80 R. at 13-14.
81 R. at 14-15.
82 R. at 24.
83 R. at 26-32.
84 R. at 27.

frequently reach bilaterally, frequently handle objects, perform light work as defined by the Social Security regulations, but never climb ladders, ropes, or scaffolds, never kneel, never crawl, only occasionally climb ramps or stairs, only occasionally stoop, and only occasionally crouch, could perform plaintiff's past relevant work.[85] The VE testified that such a person could perform plaintiff's past relevant work, but no other jobs.[86] Prior to age 60, plaintiff could have performed other jobs.[87] The VE also testified that an individual who is prevented by medical conditions and associated pain from engaging in sustained work activity on a regular and continuing basis for eight hours a day, five days a week, for a 40-hour work week, would not be able to engage in competitive work at any exertional level.[88]

## C. The ALJ's March 27, 2008 Decision

The ALJ ruled that plaintiff was not disabled and, thus, was not entitled to DIB.[89] His decision followed the five-step sequential process outlined in 20 C.F.R. 404.1520(a) and found plaintiff not disabled at step four.[90] Before beginning this process, the ALJ determined that plaintiff met the insured status requirements of sections 216(i) and 223(d) of the Social Security Act,[91] meaning that plaintiff had acquired sufficient quarters of coverage to remain insured through June 30, 2010.[92]

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since December 8, 2004.[93] At step two, the ALJ found that plaintiff suffered from degenerative

---

85 R. at 30-31; s*ee* 20 C.F.R. § 404.1567(b).
86 R. at 31.
87 *Id.*
88 R. at 32.
89 R. at 49.
90 R. at 56.
91 42 U.S.C. § 416(i); 42 U.S.C. § 423(d).
92 R. at 52.
93 R. at 54.

disc disease of the lumbar spine with disc herniation and lumbar spondylosis, and that these impairments qualified as severe under the Social Security regulations because they caused more than minimal limitations in plaintiff's ability to perform basic work.[94]

At step three, the ALJ found that plaintiff lacked an impairment or combination of impairments meeting or medically equaling those listed in Title 20 of the Code of Federal Regulations, Part 404, Subpart P, Appendix 1.[95] In support of this finding, the ALJ stated that the only neurological deficits reported by plaintiff's doctors were weakness during examination by Dr. Chavez and some limited range of motion reported by Dr. Mathew.[96] The ALJ asserted that Dr. Rabinowitz had explicitly stated that plaintiff lacked any motor weakness, reflex loss, or sensory loss.[97] The ALJ also noted that plaintiff did not use a hand-held device to walk and exhibited no evidence of ineffective ambulation.[98]

Next, the ALJ assessed plaintiff's RFC.[99] The ALJ concluded that plaintiff could perform light work, except that he could not climb ladders, ropes, or scaffolds, could not kneel or crawl, could only occasionally climb stairs and ramps, only occasionally stoop or crouch, and could frequently, but not constantly, reach in all directions and handle objects.[100] This conflicted with plaintiff's claim that pain severely impaired his ability to work.[101] The ALJ found that plaintiff's medically determinable impairments reasonably supported plaintiff's alleged symptoms, but that plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms

94 *Id.*

95 R. at 56; *see* 20 C.F.R. § 404.1520(d); 20 C.F.R. § 404.1525; 20 C.F.R. § 404.1526.

96 R. at 56.

97 *Id.*

98 *Id.*

99 R. at 57.

100 *Id.*

101 *Id.*

were not wholly credible.[102] In support, the ALJ noted that Dr. Chavez had reported weakness for only a brief period of time, and that the only negative finding Dr. Mathew had recorded was pain on range of motion.[103] The ALJ also cited a lack of reports from physical therapy, a lack of records indicating plaintiff had pursued any specialized treatment after declining surgery, and that Dr. Rabinowitz's examination had found no weakness or other neurological deficits whatsoever.[104] He noted that plaintiff had elected not to pursue recommended treatment, did not require pain medication when he was seen by Dr. Rabinowitz, and that, despite being found asymptomatic during his examination with Dr. Rabinowitz, plaintiff did not return to work.[105] He also found that plaintiff's daily activities were consistent with the RFC requirements for light work.[106] Finally, the ALJ noted that Dr. Mathew had recommended that plaintiff avoid excessive movement of his back, and that the 20-pound weight restriction that had been placed upon plaintiff by an unknown treating physician (the physician's identity is not noted in the medical record) had been accommodated by plaintiff's job at UPS.[107] The ALJ elected not to give controlling weight to the opinions of the state agency's physicians regarding plaintiff's postural limitations because the opinions were reached prior to the addition of Dr. Mathew's most recent progress notes.[108]

---

102 *Id.*

103 *Id.*

104 R. at 58.

105 *Id.*

106 *Id.*

107 *Id.*

108 *Id.*

Based on this RFC and the VE's testimony at plaintiff's disability hearing, the ALJ found plaintiff capable of performing his past relevant work as a semi-truck driver.[109] Accordingly, the ALJ ruled that plaintiff was not disabled under the Social Security Act.[110]

## STANDARD OF REVIEW

The Court reviews the Commissioner's final decision to ensure that substantial evidence supports it and that it is free from legal error.[111] Substantial evidence means such "relevant evidence that a reasonable person might accept as adequate to support a conclusion, taking into account anything in the record that fairly detracts from its weight."[112] While the Court may not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for that of the Commissioner, it will conduct a critical review.[113] The Commissioner's decision must adequately discuss the issues and have evidentiary support.[114]

## SOCIAL SECURITY REGULATIONS

The Social Security Administration prescribes a sequential five-step test for determining whether a claimant is disabled. The ALJ must consider: (1) whether the claimant is engaged in any substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude gainful activity; (4) whether, based on the claimant's residual functioning capacity, the claimant is unable to perform his past relevant work; and (5) whether the claimant is unable to perform any other work existing in significant numbers

---

109 R. at 59.

110 *Id.*

111 42 U.S.C. § 405(g); *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

112 *Young v. Sec'y of Health and Human Services*, 957 F.2d 386, 389 (7th Cir. 1992).

113 *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003).

114 *Id.*

in the national economy.[115] An affirmative answer at steps one, two, or four leads to the next step.[116] An affirmative answer at step three or step five results in a finding of disability, while a negative answer at any step other than step three precludes a finding of disability.[117]

ANALYSIS

Plaintiff argues that the Court should reverse or remand the ALJ's decision because the ALJ: (1) erred by concluding that plaintiff could perform his past work as a truck driver without discussing how plaintiff's toe numbness and shooting leg pain would affect his ability to drive; (2) improperly concluded that the evidence does not support a greater RFC restriction; and (3) erred in finding plaintiff's characterization of the intensity, persistence, and limiting effects of his symptoms not credible. The Court will examine each argument in turn.

## A. The ALJ's Consideration of Plaintiff's Leg Pain and Toe Numbness

Plaintiff alleges that the ALJ erred at step four of his analysis by finding that plaintiff could perform his past work as a truck driver without discussing how plaintiff's foot numbness and shooting leg pain would impact his ability to drive. Plaintiff argues that the ALJ should have (1) discussed the medical evidence and testimony concerning plaintiff's toe numbness and leg pain when he concluded that plaintiff could return to his past work as a driver and (2) included limitations stemming from those symptoms in his hypothetical to the VE. The Commissioner does not respond to these arguments other than to assert that the ALJ did not need to address plaintiff's testimony about his toe numbness and shooting leg pain because he found plaintiff not to be wholly credible.

---

115 *Young*, 957 F.2d 386 at 389.
116 *Id.*
117 *Id.*

An ALJ need not discuss every piece of evidence on the record.[118] However, he "must articulate at some minimal level his analysis" and his reasons for accepting or rejecting an entire line of evidence.[119] If an ALJ's rejection of one line of evidence is not explicit and reasoned, the remaining evidence can only be viewed as "substantial" when considered in isolation from that which the ALJ ignored.[120] The ALJ must build an "accurate and logical bridge from the evidence to his conclusion" so that the Court can assess the validity of the Commissioner's decision and afford the plaintiff a meaningful judicial review.[121]

First, plaintiff argues that the ALJ failed to build a logical bridge between the evidence and his determination that plaintiff could return to work as a semi-truck driver because he did not discuss testimony or medical evidence that plaintiff experiences shooting leg pain and toe numbness. Plaintiff points out a troubling gap in the ALJ's analysis. At step four, in determining plaintiff was capable of returning to his previous work, the ALJ states that "Dr. Mathew's [sic] never recorded any negative findings on examination other than pain on range of motion."[122] However, at step two, in determining whether plaintiff had a severe impairment, the ALJ mentioned that Dr. Mathew had recorded numbness and leg pain.[123] Specifically, the ALJ noted that a December 22, 2004 examination with Dr. Mathew had "revealed pain and decreased sensation in the lower extremities and slightly limited ambulation."[124] Moreover, the ALJ noted that on January 20, 2005, plaintiff had complained to Dr. Chavez about a shooting pain in his legs, and that on July 21, 2005, plaintiff "had reported numbness and sensitivity in his great right toe."[125] Based in part on

---

118 *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994).
119 *Id.*
120 *Young*, 957 F.2d at 393.
121 *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002).
122 R. at 58.
123 R. at 55.
124 *Id.*
125 *Id.*

this medical evidence, the ALJ found that plaintiff suffered from a "severe impairment," specifically "degenerative disc disease of the lumbar spine with disc herniation and lumbar spondylosis."[126]

Thus, confusingly, the ALJ appears to credit plaintiff's toe numbness and leg pain at step two, when he notes both that plaintiff had complained of such symptoms to his doctors and that Dr. Mathew had recorded numbness in plaintiff's legs.[127] But then he fails to discuss them at all in conjunction with plaintiff's capabilities, except to assert, erroneously, that Dr. Mathew's treatment notes did not include "any symptoms or objective findings other than pain on range of motion."[128]

The Commissioner argues that the ALJ did not need to discuss the impact of these symptoms because he found them to be not wholly credible. A reviewing court will uphold a credibility finding if the ALJ gives specific reasons for that finding, supported by substantial evidence.[129] But the ALJ may not simply ignore evidence.[130] If the ALJ's decision lacks adequate discussion of the issues, it will be remanded.[131] Here, the ALJ's credibility determination never mentioned toe numbness or leg pain.[132] Instead, the ALJ considered that Dr. Chavez had reported improvement, that plaintiff was asymptomatic during his examination with Dr. Rabinowitz, that plaintiff had declined to follow recommended treatment, and that plaintiff had testified that his symptoms were relieved by home stretching exercises.[133] He also noted that plaintiff could perform his job at UPS by driving 35-40 minutes at a time and then stretching.[134] He then considered plaintiff's daily activities, which included shoveling snow, mowing his law, driving a pick up truck,

---

126 R. at 54.

127 R. at 55.

128 R. at 58.

129 *Myles v. Astrue*, No. 08-2908, 2009 WL 2870616 at *3 (7th Cir. Sept. 9, 2009) (citing *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009)).

130 *Id.* (citing *Lopez*, 336 F.3d at 540).

131 *Id.* at *4 (citing *Villano v. Astrue,* 556 F.3d 558, 562 (7th Cir. 2009).

132 R. at 58-59.

133 *Id.*

134 R. at 58.

and going to the gym.[135] He, thus, found that plaintiff was capable of performing light work, subject to limitations.[136] The ALJ failed to specifically address plaintiff's symptoms of leg pain and toe numbness during his credibility determination, other than to erroneously assert that Dr. Mathew observed no pain other than pain on range of motion.[137]

Additionally, plaintiff argues that the ALJ failed to consider the specific ramifications that leg pain and toe numbness might have on plaintiff's ability to operate a semi-truck. As a preliminary matter, the Court notes that plaintiff's counsel failed to raise this issue during the administrative hearing.[138] Ordinarily, an appellate court does not consider issues not raised below.[139] However, the non-adversarial nature of Social Security cases warrants a relaxation of the issue-exhaustion rule.[140] This Circuit has yet to rule on whether a Social Security plaintiff waives an issue on appeal by failing to raise it an administrative hearing,[141] thus the Court turns to the merits.

Plaintiff compares his case to *DeFrancesco v. Bowen*,[142] in which the Court of Appeals held that the ALJ erred because he did not consider the impact of foot numbness on a claimant's ability to drive.[143] Plaintiff argues that the ALJ similarly erred in this case because he failed to consider the impact plaintiff's toe numbness and leg pain would have on his ability to work.

In *DeFrancesco* the plaintiff testified that, due to his foot numbness, he sometimes mixed up the brake and gas pedal while driving.[144] The ALJ in that case acknowledged the plaintiff's foot numbness in his decision but found that it only slightly reduced the plaintiff's ability to work

---

135 R. at. 59.

136 R. at 57.

137 R. at 58.

138 *See* R. 4-5, 32-35.

139 *Sims v. Apfel*, 530 U.S. 103, 109 (2000) (quoting *Hormel v. Helvering*, 312 U.S. 552, 556 (1941)).

140 *Id.* at 110.

141 *Kepple v. Massanari*, 268 F.3d 513, 517 (7th Cir. 2001) ("Whether such a terrible result would occur if *Sims* were applicable to administrative hearings in the SSA is a question this circuit or the Supreme Court may later address when directly confronted with the issue.").

142 867 F.2d 1040 (7th Cir. 1989).

143 *Id.* at 1044.

144 *Id.* at 1042.

because the plaintiff had testified that he still drove.[145]  However, the court overturned the ALJ's decision, determining that the ALJ had committed a "logical error" by concluding that, simply because plaintiff did drive, he was able to do so safely.[146] Specifically, the court found that "[n]o responsible employer would hire a person to drive a delivery van or do other work involving the use of foot controls if the person had numb feet and as a result "occasionally" mixed up the brake and the gas pedal."[147]

In the current case, by contrast, plaintiff did not testify that his toe numbness and leg pain interfered with his ability to drive. There is additionally no indication in the record that plaintiff's numbness reached the level of that experienced by the plaintiff in *DeFrancesco*, who was unable to walk more than a block at a time due to that numbness.[148] Here, although plaintiff testified that his big toe and legs hurt three or four times per week, he never indicated that these symptoms inferred with his ability to do anything.[149]

A more analogous case is *Smith v. Apfel*,[150] in which the Court of Appeals held that the ALJ erred by failing to consider the implications of the claimant's hypertension-induced dizziness and ankle degeneration on his ability to operate a forklift.[151] The claimant in *Smith* did not testify to occasionally mixing up the brake and gas pedals of his car.[152] Nevertheless, the court held that the ALJ's failure to discuss the plaintiff's symptoms in relation to his conclusion that plaintiff could return to his previous job was reversible error.[153]

---

145 *Id.* at 1044.

146 *Id.*

147 *Id.*

148 *See id.* at 1043.

149 R. at 16.

150 231 F.3d 433 (7th Cir. 2000).

151 *Id.* at 438.

152 *See id.* at 434-38.

153 *Id.* at 438 (citing *DeFrancesco*, 867 F.2d at 1044).

This Court is troubled by the lack of specificity in the ALJ's opinion. Specifically, the Court is unable to determine how the ALJ viewed plaintiff's symptoms of leg pain and toe numbness and whether he considered their impact on plaintiff's ability to return to work. Thus, the case must be remanded for further proceedings.

Lastly, plaintiff argues that the ALJ erred by not including any limitation stemming from plaintiff's shooting leg pain or toe numbness in his hypothetical questions to the VE. The hypothetical questions an ALJ poses to the VE must be based on all the limitations reasonably supported by the medical evidence.[154] This ensures that the VE knows the full range of plaintiff's limitations and, thus, will not refer to jobs that plaintiff cannot do.[155] If the hypothetical questions omit certain medical evidence, the VE's response may still be probative if there is some indication in the record that the VE knew of it.[156]

Here, the VE gave no indication either that she had reviewed plaintiff's medical history or that she independently knew of his leg pain and toe numbness.[157] The ALJ also did not specifically mention to the VE that plaintiff experiences these symptoms.[158] True, the ALJ only needed to do so if he found those symptoms to be reasonably supported by the medical evidence.[159] However, as discussed above, it is unclear whether he found them to be medically supported. It is, thus, also unclear whether the hypothetical questions that he posed to the VE needed to include such symptoms.

## B. The ALJ's Consideration of the Medical and Opinion Evidence

Plaintiff also alleges that the ALJ (1) failed to discuss large portions of Dr. Mathew's

---

154 *Steele*, 290 F.3d at 942.
155 *Id.*
156 *Young v. Barnhart*, 362 F.3d 995, 1003 (7th Cir. 2004)
157 R. at 26-32.
158 R. at 21-32.
159 *See Steele*, 290 F.3d at 942.

opinions and observations; (2) mischaracterized Dr. Chavez's findings; and (3) "apparently" gave more weight to Dr. Rabinowitz's opinion without explaining his reasoning for doing so pursuant to the Social Security regulations.

An ALJ must base his decision on a consideration of all the relevant evidence.[160] Although the ALJ is not required to discuss every piece of evidence in the record, he may not mischaracterize the medical evidence, and his decision must sufficiently articulate his assessment in a way that shows he considered the important evidence.[161] The ALJ will generally give controlling weight to opinions from a treating physician.[162] If the ALJ declines to do so, he will consider factors such as length of treatment, nature and extent of the treatment, supportability, consistency, specialization, and other factors as he determines how much weight to afford the opinion of each physician.[163]

First, plaintiff asserts that the ALJ erred by failing to discuss large portions of the opinions and observations made by Dr. Mathew. Plaintiff argues that Dr. Mathew's notes consistently show no signs of improvement from 2005 through 2008, and that the ALJ should have discussed this in greater detail. However, the ALJ need not discuss every piece of writing in the record but, rather, must simply articulate his assessment in a way that shows he considered the important evidence.[164] Here, Dr. Mathew's notes repeatedly contain phrases such as "no new findings to report" and "no change in condition."[165] By comparison, the ALJ characterized the notes as continuing to be "unremarkable except for reports of pain" with "little improvement reported."[166] The ALJ's accurate characterization of Dr. Mathew's notes, thus, shows that he considered them during his analysis.

160 *Herron*, 19 F.3d at 333; 20 C.F.R. § 404.1527(b).
161 *Golembiewski*, 322 F.3d at 916–17.
162 20 C.F.R. § 404.1527(c).
163 *Id.*
164 *Golembiewski*, 322 F.3d at 916–17.
165 R. at 192-94.
166 R. at 54-56.

Second, plaintiff argues that the ALJ mischaracterized Dr. Chavez's notes. Plaintiff asserts that, contrary to the ALJ's statements, Dr. Chavez's notes support plaintiff's disability. Plaintiff's sole support for this assertion is Dr. Chavez's initial clinical report, which states that "the estimated length of disability is undetermined at the present time."[167] The ALJ did not specifically mention this portion of Dr. Chavez's initial report.[168] But the ALJ did accurately discuss Dr. Chavez's clinical findings overall, noting that Dr. Chavez had reported weakness upon examination for a brief period of time but had later reported some improvement.[169] Because the ALJ took Dr. Chavez's initial findings into account in conjunction with his later findings of improvement, the Court finds that the ALJ had substantial evidence to conclude that "Dr. Chavez's notes reported some weakness upon examination but also reported improvement."[170]

Finally, plaintiff asserts that the ALJ erred by giving greater weight to Dr. Rabinowitz's opinion than to the opinions of Dr. Mathew and Dr. Chavez without explaining his reason for doing so. As support, plaintiff argues that the ALJ "rejected" the opinions of Dr. Mathew and Dr. Chavez without sufficient discussion. However, plaintiff does not cite, and the Court does not find, evidence in the record to support plaintiff's contention that the ALJ rejected those opinions. Rather, the ALJ considered what little opinion evidence there was from both doctors. For example, the ALJ notes that Dr. Mathew had indicated that the claimant should avoid excessive movement of his back.[171] He then accurately asserts that "there was a dearth of opinion expressed by any examining physician."[172] Again, plaintiff does not point to, and the Court does not find, any opinion evidence that contradicts this statement.

---

167 R. at 187.
168 R. at 57-59.
169 R. at 57.
170 *Id.*
171 R. at 58.
172 *Id.*

The only opinions the ALJ actually declined to afford controlling weight to were those of the state agency consultants, who found the plaintiff to be significantly less impaired than the ALJ did.[173] Although the ALJ was "somewhat persuaded" by their opinions, he declined to give them controlling weight because they had been reached before Dr. Mathew's most recent notes and without the benefit of plaintiff's testimony.[174] Thus, as the ALJ did consider the available opinion evidence from both Dr. Chavez and Dr. Mathew's, the Court does not find that his decision placed a disproportionate weight upon Dr. Rabinowitz's opinion.

## C. The ALJ's Credibility Determination

Finally, plaintiff argues that the ALJ erred in finding plaintiff's allegations regarding the intensity, persistence, and limiting effects of his symptoms not wholly credible. Plaintiff alleges that the ALJ: (1) inaccurately stated that plaintiff followed no treatment plan; (2) wrongly concluded that plaintiff was asymptomatic when he saw Dr. Rabinowitz; (3) placed undue weight on plaintiff's household activities; and (4) should have discussed plaintiff's work history.

The Court will not disturb an ALJ's credibility determination unless it is patently wrong.[175] Social Security Ruling 96-7p provides that an ALJ's credibility determination must contain specific reasons for his credibility finding, be supported by the evidence in the record, and be sufficiently specific to make clear what weight the adjudicator gave to the individual's statements and the reasons for that weight.[176] The ALJ must consider the entire record, including the objective medical evidence, plaintiff's statements about symptoms, statements and other information provided by

173 R. at 170-77.
174 R. at 58.
175 *Luna v. Shalala*, 22 F.3d 687, 690 (7th Cir. 1994).
176 SSR 96-7p.

treating physicians, and any other relevant evidence in the case record.[177] The ALJ may not disregard a plaintiff's statements solely because they are not substantiated by objective medical evidence.[178]

First, plaintiff argues that the ALJ erred by stating that plaintiff apparently pursued no treatment. Plaintiff argues that the record shows plaintiff pursued physical therapy, wore a back brace, and received steroid injections. However, the record merely shows these as recommended treatments in addition to, or instead of, surgery.[179] It is not clear whether plaintiff actually pursued any of these recommended treatments. The record shows only that plaintiff declined the surgery that Dr. Chavez told him he "definitely" needed,[180] and it does not show that he followed any other course of treatment. The Court, therefore, finds that substantial evidence supports the ALJ's finding that plaintiff apparently pursued no treatment.

Second, plaintiff argues that evidence from other doctors contradict the ALJ's finding that plaintiff was asymptomatic and did not require pain medication at the time he saw Dr. Rabinowitz. This amounts to a challenge of the ALJ's determination of fact, which will not be overturned if substantial evidence supports it.[181] Here, the ALJ relied on Dr. Rabinowitz's findings that plaintiff did not demonstrate any objectively demonstrated disabilities during his examination.[182] The ALJ also accurately noted that Dr. Mathew's notes contained relatively little information, and that Dr. Chavez had recorded some improvement.[183] Thus, because the ALJ evaluated the medical evidence from several different sources, the Court finds that substantial evidence supports his finding that plaintiff was asymptomatic and did not require pain medication when he saw Dr. Rabinowitz.

---

177 *Id.*

178 *Id.*

179 R. at 182-188, 192-94.

180  *See* R. at 158.

181 *See Cass v. Shalala*, 8 F.3d 552, 554-55 (7th Cir. 1993).

182 R. at 58, 168-69.

183 R. at 57-58.

Third, plaintiff argues that the ALJ placed undue weight on plaintiff's daily activities. In his opinion, the ALJ considered plaintiff's daily activities and found them consistent with an RFC permitting light work.[184] The ALJ noted plaintiff's statements that he could perform his past job at UPS by driving 35 to 40 minutes at a time.[185] The ALJ also noted that plaintiff had testified that he could stand for 30 minutes at a time, sit for up to forty minutes at a time, reach over his head, experienced pain often but not daily, and was able to shovel snow, drive his grandchild to school, care for his personal needs, drive a pickup tuck, do dishes, vacuum, shop, take out the trash, mow the lawn, and that he had recently joined a gym.[186] The ALJ, thus, appears to have accurately summarized plaintiff's own testimony regarding his daily activities.[187]

Plaintiff cites *Mendez v. Barnhart*[188] as support for his claim that the ALJ placed too much weight upon his daily activities. However, that case (which does not itself state how much reliance on household activities is too much reliance) relies on other cases where the ALJs erred by explicitly equating household activities with activities performed in the workplace.[189] Here, by contrast, the ALJ considered plaintiff's daily activities as one among many factors required by the Social Security regulations.[190] Thus, the Court cannot say that the ALJ placed undue weight on plaintiff's daily activities.

Finally, plaintiff argues that the ALJ erred because he did not consider plaintiff's work history. However, the ALJ did consider plaintiff's work history. In his analysis of plaintiff's credibility, the ALJ states that plaintiffs "symptoms did improve, as he testified they had done in the

---

184 R. at 58.

185 *Id.*

186 R. at 58.

187 *See* SSR 96-7p.

188 439 F.3d 360 (7th Cir. 2006).

189 *Id.* at 362 (citing *Gentle v. Barnhart*, 430 F.3d 865, 867 (7th Cir. 2005); *Draper v. Barnhart*, 425 F.3d 1127, 1131 (8th Cir. 2005); *Kelley v. Callahan*, 133 F.3d 583, 588-89 (8th Cir. 1998); *Smolen v. Chater*, 80 F.3d 1273, 1284 n. 7 (9th Cir. 1996)).

190 *See* R. at 58.

past... However, the claimant did not return to his job as he had done in the past."[191] Plaintiff's work history was among the many factors required by the Social Security regulations that the ALJ duly considered.[192] Plaintiff cites no cases, and the Court similarly does not find any case, implying that the ALJ should have treated plaintiff's work history differently or given it more weight than he did in this case.

CONCLUSION

The ALJ's opinion relied on specific reasons and is supported by evidence in the record. However, as stated above, the Court is troubled by the ALJ's failure to specifically discuss plaintiff's symptoms of leg pain and toe numbness after step two of his analysis. Thus, the Court must remand for further proceedings. For the reasons set forth above, the plaintiff's Motion for Summary Judgment is granted [dkt 15].

**IT IS SO ORDERED.**

Dated: <u>October 8, 2009</u>

_____
SUSAN E. COX
United States Magistrate Judge

---

191 R. at 58.
192 *See* 20 C.F.R. § 404.1529(c).